Williams, J.
The questions in the ease, are:
1. Was it competent for the defendant to .impeach the judgment on which the suit was brought, by showing in contradiction of its recitals, that he was not served with process, nor jurisdiction otherwise obtained of his person? And if so, (2) was the answer defective because it failed to state a defense to the cause of action on which the judgment was rendered? Two seemingly conflicting principles have given rise, in their application, to differences of judicial opinion concerning the effect of judicial records. The one accords to judgments of courts having apparent jurisdiction of the subject matter and parties in an action, conclusive verity as to all matters purporting to have been adjudicated, and precludes a re-examination of them in subsequent litigation between the parties and their privies. And the other, asserts the right of every person to his day in court, and an opportunity to be heard, before he can be condemned in his person or property. In accordance with the former, the rule generally prevails, and is nowhere more firmly established than in this state, that when it does not otherwise affirmatively appear from the record, it will be conclusively presumed, whenever a domestic judgment of a court of general jurisdiction is .drawn in question in any collateral way, that the court regularly acquired and lawfully exercised its jurisdiction over the parties; and the record of an inferior court imports absolute verity when it shows on its face that such jurisdiction was obtained; and neither the presumption, nor recitals of the record, can be contradicted in such a proceeding, by extrinsic evidence. When the record discloses a want of jurisdiction the judgment is, of course, void every *456 where, and for every purpose. On the other hand, the other principle referred to is sometimes employed to justify the broad statement that in all cases, even when the judgment is collaterally assailed, the jurisdiction of the court rendering it may be inquired into, and a want of service, or the absence of other, jurisdictional facts be shown by parol, in opposition to the recitals of the record. ’ Most of the cases in which the rule is so stated that have fallen under our observation, however, are those in which the question arose upon defenses to suits on judgments, and may, perhaps, on that ground be brought in harmony with the rule usually adopted of permitting such inquiry and proof when the judgment is directly attacked for want of jurisdiction. For while there is some conflict of the decisions as to whether, where there is a presumption of service and jurisdiction, or where these - appear on the face of the record, it can be shown in a collateral proceeding that in fact no service was had, the authorities are substantially uniform-to the effect that when the judgment is directly attacked for want of jurisdiction, such want of service and jurisdiction may be shown, though it be in contradiction of the record. But here, again, the authorities differ as to what constitutes an attack of that nature. It is conceded that it includes proceedings in error, motions to vacate or modify the judgment, and that in some cases it may be made by original action, as was formerly done by bill in chancery to correct or set aside the judgment. That in a suit brought in one state upon a judgment rendered in another, it is competent to show that the judgment was rendered' without jurisdiction, though the record récites all necessary jurisdictional facts, is
*457 maintained by a series of decisions of tbe Supreme Court of the United States, notwithstanding the provision of the federal constitution which requires that “full faith and credit shall be given, in each state, to the public acts, records and judicial proceedings of every other state, ” and the act of congress in pursuance thereof, providing that they “shall have such faith and credit given them in every court within the United States, as they have by law or usage in the courts of the state from whence the records are or' shall be taken.” D'Arcy v. Ketchum, 11 How., 165; Thompson v. Whitman, 18 Wall., 457; Pennoyer v. Neff, 95 U. S., 714. In several reported decisions of this court the same rule has been declared. Pennywit v. Foote, 27 Ohio St., 600; Spier v. Corll, 33 Ohio St., 236. And in the state of New York, the courts maintain the same right of attack in suits on domestic judgments; holding, that there is no solid ground upon which to rest a distinction in that regard between domestic judgments and those of sister states. Borden v. Fitch, 15 Johns., 141; Ferguson v. Crawford, 70 N. Y., 253.
In Spier v. Corll, supra, the action was upon a judgment rendered in another state; but the court, in the syllabus, lays down the broad rule, that “the jurisdiction of a court or tribunal entering a judgment in any particular case may always be inquired into, when such judgment is made the foundation of an action either in a court of the state in which it was rendered, or of any other state. ’ ’ And in the ease of Clark v. Little, 41 Iowa, 497, it is held that, where in a suit on a domestic judgment the defendant denies the jurisdiction of the court rendering it, for want of notice, or service of process, his defense is not a collateral, *458 but a direct attack upon the judgment, and it is permissible for him to show that service was not made upon him. Cases are found in other states also, which maintain that doctrine. A direct attack on a judgment has been defined to be one by which the judgment is directly assailed in some mode authorized by law; while a collateral attack is an attempt to' defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved. The rules of law applicable to these different methods of attack are based on substantial reasons which serve to make more apparent the real distinction between them. The rule which forbids the collateral impeachment of judgments is founded on those considerations of public policy which require stability of judicial records for the protection of those who acquire rights and property in reliance upon their conclusive effect, and for the peace of society; and, as said by Read, J., in Boswell v. Sharp, 15 Ohio, 447, 465, “seems to have been adopted from right and necessity, to give confidence to the judicial action of the country, and protect those who have made purchases on the faith of judicial sales.” It is obvious these reasons find no just application in an action brought upon the judgment, in which the only relief sought is a new recovery on it, as a debt of record; and where no rights of third persons have intervened, or are involved. Nor, in such case, would there appear to be any substantial ground for denying to the defendant the right to show in defense to the action, that the judgment was rendered without jurisdiction. Such a defense may, we think, be properly regarded as a direct attack on the judg *459 ment, and not within the rule or its reason, against collateral impeachments.
Besides, the answer of the defendant in the action below alleges that he was a resident of the state of Illinois when the suit was brought before the justice, and when the judgment was rendered; and that he was not served with process, nor his appearance otherwise effected. And, since the adoption of the fourteenth article of amendment to the federal constitution, the Supreme Court of the United States has held, that the validity of a personal judgment rendered by a state court against a person who was at the time a resident of another state, and who was not served with process nor appeared, may be questioned, and its enforcement resisted on the ground that the proceedings of a court of justice to determine personal rights and obligations of one over whom it has no jurisdiction, is not due process of law. To give such proceedings, any validity, that court says, there must not only be a tribunal competent to pass upon the subject matter of the suit, but, if “that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process or his voluntary appearance. ’ ’ Pennoyer v. Neff, 95 U. S., 714; Freeman v. Alderson, 119 U. S., 185. Following these decisions, and applying them to a case not distinguishable in its facts from the one before us, the Supreme Court of Massachusetts has recently held, that a judgment in personam against a person • who was not personally served with process, nor appeared in the action, cannot be enforced by a suit upon it, either in the same or in any other court; nor can the defendant in an action upon it, be deprived of his right to show by *460 plea and proof that the judgment is void, without abridging his privileges and immunities which it was the object of the fourteenth article of amendment to protect. Needham v. Thayer, 147 Mass., 536. Whether the enforcement of such a judgment, or a denial of the right to defend against it by showing the want of jurisdiction of the court rendering it, violates the constitutional provision referred to, is a federal question, with respect to which the state courts are necessarily controlled by the decisions of the National Supreme Court.
But, it is claimed that sections 5354, to and including 5360, of the Revised Statutes, provide a method of direct attack upon judgments, by proceedings thereunder to have them vacated or modified,of which the defendant should have availed himself, and by which he is required to tender a good defense to the action, before a vacation of the judgment can be obtained. Neither in their terms, nor in their nature, are these provisions of the statute applicable to justice’s courts; and if they were, the time within which the remedy they afford may be resorted to, had elapsed, as the answer alleges, long before the judgment complained of was discovered by the defendant. The only provision of the justice’s code on the subject, is contained in section 6578, which authorizes a defendant, when a judgment has been rendered against him in his absence, to move within ten days thereafter to have it set aside upon the terms therein prescribed; and the limitation contained in that section, rendered impracticable any proceeding under it by the defendant after he first learned of the judgment. In such a case, under the practice which prevailed before the *461 adoption of the civil code, a hill in equity would lie for relief against the judgment; or, similar relief might have been obtained by cross bill in a suit in the nature of a creditor’s bill to reach equitable interests of the judgment debtor, or other proceeding in chancery to enforce the judgment. Bank v. Stevens, 1 Ohio St., 233; Ridgeway v. Bank, 11 Humph., 523; Bell v Williams, 1 Head, 229; McNeil v. Edie, 24 Kan., 108. And where the judgment was obtained without jurisdiction of the party, he was not required to tender a valid defense to the cause of action on which the judgment was rendered, in order to obtain relief against it. The practice in chancery, in such cases, is sufficiently shown by the' case of Ridgeway v. Bank, supra, which was a suit to enjoin the collection of a judgment the record of which showed the defendant therein was duly served with process, and was otherwise regular on its face. The bill to enjoin, alleged that the complainant was not summoned, and the judgment was rendered without notice to him. The court said: “In the first place, it is very evident that if the party was not summoned, and did not appear in the suit at law, the court had no jurisdiction of his person, and its judgment against him, would be, for that reason, merely void. This principle is founded in natural justice, and is universal in application. Borden v. Fitch, 15 J. R., 140; Bigelow v. Stearns, 19 J. R., 40; Buchanan v. Rucker, 9 East., 192. A judgment thus obtained, without notice or defense, and without a day in court to make defense, is an injury to the rights of the party • for which he should not be without remedy. Now, in the present case, this principle should apply with the *462 greater force because the judgment in question is to be considered as void, by reason of an extrinsic fact, which eannot'be averred or be made to appear in a court of law, and a court of law has not, therefore, any power to arrest its execution however unjust or iniquitous. Nor is it material in such case to inquire whether the defendant could have made any valid defense, if he had been summoned. The injury of which he justly complains is, that a judgment was rendered against him without notice and without defense. We cannot doubt but that in view of a court of equity, it is unjust and unconscientious to attempt to enforce a judgment so obtained.”
The equitable remedy was not taken away by those statutory provisions authorizing an application to the court in which the judgment was rendered, to vacate or modify the judgment; nor was it abrogated by any provision of the code. And, as the ultimate legal and equitable rights of the parties concerning the subject matter in litigation, may now be finally determined in the civil action of the code, which has taken the place of both the former action at law and suit in equity, there is no reason why, in an action on a judgment, the defendant may not plead by way of defense, any matter which would have been available as a ground of relief in equity against the judgment. The code authorizes a defendant to plead the equitable, as well as the legal defenses he may have to an action; and whatever is sufficient in equity to defeat a judgment, or its enforcement, is a valid equitable defense to an action brought upon it. The answer of the defendant in the action below stated a defense of that character. If sustained by proof it practically puts an end to the judg *463 ment, and affirmative relief by way of injunction is unnecessary. The judgment below must be reversed, and cause remanded.

Judgment accordingly.